STATE BANK OF INDIANA, Appellant, v. MARVIN J. GATES.

False Representations: FUTURE EVENTS: *Want of consideration.* At the time defendant agreed to purchase stock in a corporation and give his notes therefor, the agent of the owner of the stock represented that such owner would not sell or negotiate the notes, that defendant would not be called on to pay the notes, except out of the profits and dividends of the stock, that such owner would secure contracts for and plant a specified amount of hedges and assign the contracts for the payment thereof to such corporation, and that the hedges would grow and make good fences. The notes were assigned to plaintiff, the hedges planted did not grow, and the corporation never paid a dividend. *Held*, that the fact that payee of the notes did not fulfill the representation made by his agent does not support the defense of want of consideration for the notes, since such representations all related to future events, and not to past transactions or then existing conditions.

SAME: *Fraud.* Where defendant was induced to give his notes for stock in a corporation by representations of the payee that he would thereafter do certain things which would make such stock valuable, and there is no evidence that at the time the representations were made the payee did not intend to and believe he could perform, the failure to perform does not establish fraud which will vitiate the notes.

*Same.* Where defendant purchased stock in a corporation of the owner of the majority of its stock at one-third the face value thereof, an allegation that such owner sold other shares to another at a greater discount does not charge such fraud as would relieve defendant from liability on his notes given for such stock.

*Appeal from Linn District Court.*—HON. H. M. REMLEY, Judge.

TUESDAY, MAY 28, 1901.

ACTION on three promissory notes, two of them executed to the Iowa Hedge & Wire Fence Company and transferred to plaintiff, the third executed directly to plaintiff. Defense of fraud and want of consideration. Verdict for defendant, and judgment thereon, from which plaintiff appeals.—*Reversed.*

*Crissman & Holbrook* and *Preston & Moffit* for appellant.

*Redmond & Stewart* for appellee.

McCLAIN, J.—I. As to the two notes transferred to appellant by the Iowa Hedge & Wire Fence Company, it claims that it took the same for a valuable consideration, without notice and before maturity, and therefore is protected against the defenses set out in defendant's answer; but, if these defenses were good as against the original payee, then the appellant had the burden of proof as to payment of consideration and want of notice, and the sufficiency of the evidence as to these matters was for the jury. It was not error, therefore, to submit the case to the jury, if there was any evidence supporting the defenses which defendant sets up.

II. To understand the nature of the defenses made by defendant, the conceded facts may be stated as follows: The Iowa Hedge & Wire Fence Company, an Indiana corporation, being the owner of some patent apparatus for planting and managing hedge fences, through its agents approached certain citizens of Cedar Rapids, and perhaps other localities in the state, and induced them to take a complimentary excursion to Canada for the pur-

pose of seeing hedge fences which had been grown and managed in accordance with the methods and by the machinery employed and owned by said company. After the return of the excursion, agents of the company approached defendant and others, being introduced to defendant by one of the persons who had been on the excursion, and who gave references to others, soliciting him to take an interest in a company to be formed in Iowa under the name of the Cedar Valley Hedge & Wire Fence Company, to which company the Indiana company was to transfer the right to employ its methods and use its machinery in certain counties in Iowa. More specifically, the relation between the two companies was to be this: The Indiana company was to procure contracts with farmers for the planting and care for a certain number of years of about 30 miles of hedge fencing in consideration of payments to be made periodically, and was to plant the hedges called for by these contracts, and then transfer the contracts to the Iowa company in exchange for 900 shares, of the par value of $100 each, of the stock of the Iowa company, 600 of which shares the Indiana company proposed to sell to defendant and others, retaining the other 300 shares as its interest in the Iowa company, to issue 100 shares more, and dispose of them as it should see fit. Defendant and others who should subscribe for this stock in the Iowa company, which shares were to belong to the Indiana company, and be placed in the hands of a trustee for its benefit, were to give their notes for the stock subscribed for by them at the rate of one dollar for each three dollars in par value of the stock subscribed for. It will thus appear that defendant, in executing notes to the amount of $500 for $1,500 worth of stock in the Iowa company, estimated at its par value, was not subscribing directly ·ᴖ the Iowa company for stock, but was purchasing such stock from the Indiana company. It should be stated here, as a part of the case, that some of the officers in the Indiana company were also officers in the plaintiff

corporation, and the contention on the trial was that the two corporations were practically the same thing, so that plaintiff was in this way chargeable with notice of any fraud or want of consideration which could be raised as between defendant and the Iowa Hedge & Wire Fence Company, to which defendant's notes were made payable. But the consideration suggested in the first division of this answer obviates the necessity of a further discussion of this question. The Indiana company (that is, the Iowa Hedge & Wire Fence Company) did in fact plant about 30 miles of hedge fence under contracts with farmers, and did turn over to the Iowa company the contracts by which the farmers agreed to pay for such fences; and the Iowa company declared by resolution that the Indiana company had fully performed all the conditions of its contract with reference thereto, and had become entitled to the 900 shares of stock in the Iowa company. There is some evidence, however, to the effect that the hedge fences were improperly planted, that the plants would not grow in Iowa so as to make hedge fences, and that the hedges set out by the Indiana company under the contracts which were turned over to the Iowa company did not become of any value. It seems to be conceded that the Iowa company (that is, the Cedar Valley Hedge & Wire Fence Company) has practically ceased to exist, and that its stock is of little or no value. The defense interposed to recovery on the notes in suit, so far as there is anything in the evidence which can be claimed to support them, are, substantially, that, at the time defendant subscribed for the stock in consideration of which the notes were given, the agents of the Indiana company represented that it would hold the notes given by defendant, and not sell, transfer, or negotiate them to third parties; that the defendant would not be called upon in any way to pay said notes, except out of the profits alone and dividends declared on the stock in the Iowa company; that the Indiana company would plant and complete the required amount of hedge fencing,

and turn the same over to the Iowa company in good condition; that the same would grow and make a good hedge fence in three or four years, from which large profits would accrue; that the agents and representatives of the Indiana company had large experience in the growing of said hedges in different localities and in country of the same climate as Iowa, and that such hedges would grow and thrive in and about Linn county, Iowa; that defendant knew nothing about the hedges, plants, corporation, or stock, except what was told him by the said representatives, all of which representations were falsely and fraudulently made to induce defendant to execute said notes; that said plants did not grow, nor were there any hedge fences made or furnished as represented, and there have never been any profits or dividends declared by or accruing to the Iowa company or its stockholders. There can be no question but that, although defendant's notes were executed in payment for stock in the Iowa company, and not directly for an interest in the · hedge contracts which the Indiana company was to turn over to the Iowa company, yet, inasmuch as the value of this stock would depend largely upon the value of these contracts, false representations as to the feasibility of the fencing scheme would be so far material to the contract that they might be shown by defendant; but it ·is to be noticed that the representations were as to what would be done in the future, and it is well settled that the mere failure to carry out the terms of a contract will not enable the other party to rely on such failure as constituting a want of consideration in the original agreement. On a proposition so elementary it is not necessary to cite authorities. The evidence as to want of consideration was directed entirely to the insufficiency of what was done by the Indiana company under its agreement with the Iowa company. We find no evidence whatever that this contract was made with the knowledge and belief on the part of the representatives of the Indiana company that such contract

could not be carried out. We think, therefore, that there was no evidence of want of consideration on which this defense could be submitted to the jury, and that in submitting to the jury any such defense the court erred. *Whilsett v. Railway Co.,* 67 Iowa, 150; *Stein v. City of Council Bluffs,* 72 Iowa, 180; *Negley v. Cowell,* 91 Iowa, 256.

III. Much evidence was admitted, and several instructions were given, based on the general theory that the whole transaction was fraudulent, and with the purpose on the part of the promoters of the scheme to defraud defendant and others who were induced to give notes in exchange for stock in the Iowa company, but we find no allegations in defendant's answer which are broad enough to justify the action of the court  The allegations as to fraud relate to matters involved in the connection between the two companies, and while, undoubtedly, under proper averments as to the fraudulent character of the whole scheme, these particular allegations might be material, we do not find any fraudulent scheme charged. All that matter is left to inference, not only in the answer of defendant, but also in the evidence. There was, without question, a duly-incorporated company to which these notes were executed. There was a duly-incorporated company by which the stock transferred to defendant was regularly issued. The misrepresentations complained of by defendant, if false, were as to what the Indiana corporation would do in the future; and representations of that kind cannot be shown, we think, as establishing fraud which will vitiate the notes, any more than they can be shown for the purpose of establishing want of consideration.

IV. One element of fraud greatly relied on is a pretended secret agreement between the promoters of the scheme and one Hamilton, whose name appeared on the list of subscribers to stock at the time defendant made his subscription, by which said Hamilton was to pay for his stock at a lower price than that at which stock was transferred to defendant.

But it is to be noticed that the value of stock in the Iowa company was not dependent in any way on the amount which the Indiana company should receive therefor from these subscribers. That value was dependent upon the hedge contracts, and the value of the contracts and privileges which were to be transferred to the Iowa company by the Indiana company. Defendant well knew that this stock was being transferred to him at one-third its par value.

4 The mere allegation that, by a secret agreement with Hamilton, stock was transferred to him at a lower rate than that at which defendant's stock was sold to him, does not charge such fraud as would relieve defendant from liability on his note given for such stock. Such fact might, with others, tend to establish a fraudulent scheme, but no other facts tending to show that the dealing with Hamilton was in pursuance of any fraudulent scheme to deceive defendant as to the value of the stock defendant was to receive are either alleged or proven. Hamilton did in fact sign the subscription paper, and, so far as appears, became bound as a stockholder in the Iowa company, and its president; and, by defendant's own testimony, it was Hamilton's name on the subscription paper, and not any representations as to what Hamilton paid, that served as one of the inducements to defendant to subscribe.

It is not necessary to notice in detail the many assignments of error relating to evidence received and instructions given to the jury. What has been said sufficiently indicates the theory on which the case should have been tried.—Reversed.