## TROXLER v. BUILDING CO.

(Filed November 30, 1904).

1. EVIDENCE—*Corporations—Cancellation of Instruments.*

> In an action to set aside a deed to a corporation for fraud and misrepresentation, evidence that fraud was practiced on the state in procuring the charter is competent as tending to sustain the charge of fraud.

2. VENDOR AND PURCHASER—*Evidence—Cancellation of Instruments—Fraud.*

> In this action to set aside a deed to a corporation for fraud and misrepresentation the evidence is sufficient to be submitted to the jury.

3. CANCELLATION OF INSTRUMENTS—*Fraud—Vendor and Purchaser.*

> Where a vendor is induced to sell land to a corporation upon the false representation that the purchaser would erect buildings thereon, and the purchaser fails to do so, the contract will be rescinded.

4. VENDOR AND PURCHASER—*Damages—Contracts.*

> Where a vendor sells land upon an agreement that the purchaser will erect buildings thereon, and the purchaser fails to do so, the vendor may recover the damages he sustains by breach of the contract, there being no fraud in the transaction.

5. DEEDS—*Cancellation of Instruments—Fraudulent Conveyances—Fraud.*

> Where plaintiff sued to rescind a sale of land for fraud, he was not entitled to have the property sold if he should fail to comply with the condition of a decree setting aside the sale on repayment by plaintiff of a part of the price received by him.

ACTION by G. H. Troxler against the New Era Building Company and others, heard by *Judge C. M. Cooke* and a jury, at May Term, 1904, of the Superior Court of ALAMANCE County.

TROXLER *v.* BUILDING CO.

Plaintiff alleged that prior to July 31, 1903, he was the owner of a lot in the city of Burlington on the south-east corner of Main and Davis streets, and on said day he was the owner of other adjoining real estate, and had caused to be erected several small wooden buildings on said lot which were rented to tenants at a monthly rental, also a livery stable and a dwelling, both of which were rented; that early in the year 1903 he was contemplating the erection, upon the lot first described, of such a building as would be desirable for business firms and corporations of said city, and had partly agreed with a contractor for the erection of such building, his purpose being to render more valuable the property adjacent thereto, owned by him as aforesaid; that at the suggestion of said contractor plaintiff saw defendant Murray, who broached the matter of the purchase of the property, being the first described lot, by a corporation known as the "New Era Building Co.," and the said Murray acting as agent of said company requested plaintiff to sell the lot to the company, representing to plaintiff that if he would do so the company would at once proceed to have erected a building upon the property; that Murray described said building and stated that it would be of pressed brick with solid glass fronts on both Main and Davis streets; that upon the corner was to be a room or rooms which were to be occupied by the Alamance Loan and Trust Company, the leading bank in Burlington, and that upon the first floor, in addition to the bank, were to be three up-to-date and well-appointed store-rooms; that the second floor was to be for lodge rooms and offices, and that the building was to cost from $12,000 to $15,000. Murray represented that the company was able to and would have the building erected, and by his statements led the plaintiff to believe that the only thing needed was the procuring of plaintiff's said real property at a low price; that in said conversations Murray's attention was called to the

fact that the lot which was owned by plaintiff would be greatly enhanced in value by the erection thereon and the moving into the vicinity of said bank, of merchants, of business men, and the like; that the charter of the corporation of the company showed that it had a subscribed capital stock of $6,000—$1,000 of which was subscribed for by the defendant Murray, $2,000 by defendant Anderson, a man of character and means, and $3,000 by defendant Hay, a man reputed to be worth a considerable sum.   By reason of these representations of Murray, acting as agent of defendant company, after much persuasion plaintiff agreed to sell the property to the building company for $2,000 in cash, $500 in stock in the company, and for the further consideration of the erection upon the lot of the building described by Murray; that at the time of signing the contract, Murray, representing the company, paid plaintiff the sum of $500 cash in part of the purchase-money, said amount being paid by the check of W. E. Hay who was consulted by Murray before he closed the trade.   Thereafter plaintiff had several conversations with Murray, who said that the company was certainly going to erect a building, and that on one occasion he exhibited drawings showing how it would look when completed; that at the time plaintiff was to convey the property under the contract, Murray stated that the company did not have money in hand to make the cash payment, the defendant Hay asked the plaintiff to take a check payable in twenty days for the balance of the money.   Plaintiff asked for his $500 in stock and was told that it was ready for delivery, but plaintiff never saw or had possession of said stock.   Plaintiff asked Murray if the stock was legal and all right, whereupon Hay expressed doubt as to its legality; that by reason of the representations and inducements as to the financial ability of the company by Hay and Murray, plaintiff was induced to execute a deed for the property to the company for a recited

consideration of $2,500, of which he had received $500 in cash, taking the check of Hay payable in twenty days for the balance.  Between the date of the deed and the time the check became due, the company, without consulting plaintiff and without his knowledge, conveyed the property to a company known as the "Piedmont Building Company," organized and promoted by the defendants Murray and Hay, and in which the defendants, Holt, Rose and Mayfield, were the charter members, and that the consideration of the deed was $3,500; that at the expiration of twenty days plaintiff demanded of Murray his stock in defendant company and was informed by him that there was no such company as the "New Era Building Company" but tendered him stock in the "Piedmont Building Company," which he refused to take.  Murray informed him that he must take this stock or take the $500 or nothing.  Defendant Hay, president of said company, has announced its intention of going out of business and has had the property advertised for sale; that the New Era Building Company was never legally organized and did not have three *bona fide* subscribers to its capital stock; that Anderson did not agree to take $2,000 worth of stock therein, but signed a subscription list agreeing to take $100 stock if after investigation he thought it was going to be a valuable investment; that Anderson was told by Murray at the time that it was merely a formal matter and did not bind him to take stock; that he never had any money; that there was never one cent paid to said company; that all the money it ever had was the amount advanced by the defendant Hay to pay for plaintiff's land; that said company never had any prospect of being able to erect said building; that by and through the representations of Murray the deed was procured by fraud and misrepresentation at about one-half the real value of the land; that at the time the conveyance was made the company had no idea of erecting such building as that

described by defendant Murray and was financially unable
to erect a building of any kind, and that at that very time it
intended to convey the property to the Piedmont Building
Company, whose organization had been procured only a few
days before by Murray acting for himself and Hay; that all
of these facts were concealed from plaintiff; that the Pied-
mont Company is in reality the successor of the New Era
Company, and was organized to take this property from the
latter company to make difficult the procuring of justice by
this plaintiff; that those who signed themselves as charter
members of the Piedmont Company acted under the same
misapprehension and representations as the said Anderson in
the New Era Company, and that none of them have ever paid
one cent into said company; that W. K. Holt, one of the
signers, upon finding out what the company was up to, im-
mediately withdrew from it and refused to have anything
more to do with it, and that he was never such a *bone fide*
subscriber to its capital stock as is required by law for the
legal procuring of a charter; that the whole matter was a
scheme on the part of Murray and Hay to procure the prop-
erty of plaintiff for a consideration vastly less than its actual
value, and as plaintiff is informed and believes the true facts
were known only to these two of the personal defendants and
the other personal defendants had nothing to do with it, but
their names and signatures were sought to give to the trans-
action the stamp of approval which their names would give,
and that the use of their names was procured through mis-
apprehension and by concealing from them the true nature
and real purpose of the organization of the said corporations;
that the entire interest in said real property is now owned by
Hay, and that this was the end which was sought by him and
Murray from the beginning; that neither of said companies
were properly or legally organized nor capable of taking or
holding any real property; that the conveyance of the prop-

erty by plaintiff was obtained by fraud and misrepresenta-
tion and for a totally inadequate consideration; that since
the execution of the conveyance the property has been greatly
damaged by the removal therefrom of all the buildings
formerly located thereon, and by the cutting of the trees sit-
uate thereon, and plaintiff has been further damaged by fail-
ure to receive any rent therefrom. Plaintiff is ready, willing
and able to pay defendant Hay the whole of $2,500, and
hereby tenders the same and prays that the deed may be can-
celled.

Defendants denied all charges of fraud and misrepresen-
tation, either in respect to the organization of the several cor-
porations or procuring the conveyance of the plaintiff's prop-
erty. They deny that it was not the purpose of the New Era
Company to erect the building, or that the building thereof
entered into the consideration of the conveyance. They say
that the city refused to grant a permit to the company to
erect the building. They further say that the property was
not at the time of the conveyance worth more than the
amount paid therefor. They deny that they refused to issue
to the plaintiff the shares of stock in accordance with the con-
tract, but on the contrary plaintiff refused to accept the
stock.

By leave of Court plaintiff amended his complaint so as to
allege "That at and before the time of the execution of the
contract to convey and of the deed conveying the property
hereinbefore described, that defendants W. E. Hay and
J. W. Murray represented and agreed that they would have
erected upon said lot the building hereinbefore described,
and that said representation and agreement was held out as
and did act as an inducement to plaintiff to execute said deed
and contract, and that said building has never been erected,
and that said failure to erect said building has endamaged

plaintiff in the sum of fifteen hundred dollars," which defendants denied.

The defendants tendered issues, which the Court declined to submit. Defendants excepted. The Court thereupon submitted the following issues:

1. "Was the execution of the contract to sell the land in controversy from Troxler to W. E. Hay and associates, and the deed from Troxler to the New Era Building Company, procured by fraudulent and false representations on the part of said Hay and J. W. Murray? Ans. 'Yes.' "

2. "Is the Piedmont Building Company a purchaser for value and without notice of said property? Ans. 'No.' "

3. "What damage, if any, has Troxler sustained by the removal of buildings, cutting of trees and the loss of rent from the property? Ans. '$216.' "

4. "Was it agreed by Murray, acting for himself and as agent of Hay, at the time of the execution of the contract and up to and at the time of the execution of the deed and as a part of the consideration therefor, that a brick building containing rooms for stores, bank, opera house and offices should be erected upon said lot? Ans. 'Yes.' "

5. "Has the building been erected? Ans. 'No.' "

6. "What damage, if any, has Troxler sustained by reason of the failure to erect the building? Ans. '$250.' "

7. "Did Troxler accept $500 in cash in place of the stock in the New Era Building Company? Ans. 'Yes.' "

8. "What damage, if any, has Troxler sustained by his failure to get said stock? Ans. '$200.' "

Defendants excepted, and from a judgment upon the verdict appealed.

*Parker & Parker* and *W. H. Carroll,* for the plaintiff.

*J. T. Morehead* and *G. S. Ferguson, Jr.,* for the defendants.

CONNOR, J., after stating the facts. This record contains ninety-one pages, with twenty-two exceptions directed to every phase of the case from the amendment of the complaint to the form of the judgment. The case involves not only property rights, but the conduct and character of the parties. It was contested at every point by learned and able counsel. We have given to the exceptions a careful examination and consideration and will endeavor, as briefly as is consistent with clearness, to give our reasons for the conclusion reached. Both parties submitted a large number of prayers for special instructions, a portion of which were given and others refused. His Honor set aside the verdict on the eighth issue, and an examination of the judgment shows that it is based upon the findings upon the first and second issues. The issues numbered four to seven inclusive were submitted by his Honor to enable him to render a proper judgment if the jury had found for the defendant upon the issue in regard to the alleged fraud, and found that the defendants had broken their contract in regard to the erection of the building. His Honor's action in this respect was in accordance with the theory of The Code system of practice by which, upon special findings, the Court is enabled to give such judgment, either of a legal or equitable character, as the parties may be entitled to. Under the former system the plaintiff would have been compelled to bring an action at law to recover damages for breach of contract, or, if he wished to avoid the deed for fraud entering into consideration, file a bill in equity. That legal and equitable causes of action may be joined, and that such judgment may be rendered as will protect the legal and equitable rights of the parties, is well settled. *Lee v. Pearce,* 68 N. C., 76; *Hutchinson v. Smith,* 68 N. C., 354; *Bank v. Harris,* 84 N. C., 206; *Benton v. Collins,* 118 N. C., 196. It is true that the plaintiff does not, as good pleading would suggest, state separately his several causes of action, but, if

upon the facts stated, the Court can see that more than one cause of action is stated, it will submit such issues as are raised by the pleadings. In this case the jury having found the first issue for the plaintiff, the other findings, except the second, became immaterial. It therefore becomes unnecessary to discuss the exceptions pointing to rulings of the Court, which apply only to the other issues. The exceptions in regard to the issues and the amendments of the complaint cannot be sustained. The exceptions to the evidence tending to show that the New Era and the Piedmont companies were not organized in accordance with the statute and that a fraud was practiced upon the State in procuring the charters cannot be sustained. It was not offered for the purpose of attacking or invalidating the charters. This could not be done collaterally. *Railroad v. Newton,* 133 N. C., 132. It was competent upon the first issue as tending to sustain the charge of fraud and misrepresentation.

The contention of the plaintiff is that, by a series of acts and declarations, the defendants Murray and Hay procured the title to his property; that the formation of the corporation constituted a part of what is called a scheme to accomplish their purpose. It is elementary learning that in the trial of an issue of fraud much latitude is allowed, and any fact which tends to show the intent of the parties is relevant and competent.

*Ruffin, J.,* in *Knight v. Houghtalling,* 85 N. C., 17, says: "Fraud rarely lurks in the written agreement of the parties entered into at the end of their negotiations with each other but almost universally precedes it, and consisting, as it must necessarily do in such a case, of acts and declarations merely, it can only be exposed by allowing the conduct of the parties, their words and deeds throughout the entire treaty, to be shown to the jury. The declarations of Murray were clearly competent. The defendant Hay cannot take advantage of his

negotiations leading up to the conveyance without assuming the burden incident thereto. There is evidence for the consideration of the jury that Hay knew of and ratified Murray's promise to have the building erected. *Lee v. Pearce, supra.* There was evidence fit to be submitted to the jury upon the first issue. The only question, therefore, for our consideration is whether there was error in the instructions given or in refusing to give those requested.

His Honor at the request of the defendants instructed the jury as follows: "The jury are instructed that on the first issue the burden of proof is upon the plaintiff, and he must satisfy you by the preponderance of the evidence that the execution of the deed and contract was procured by false and fraudulent representations of Hay and Murray; and unless the jury find from the evidence that at the time the representations were made there was no intention or purpose on the part of the New Era Building Company to erect the building described in the complaint on the lot mentioned therein, then the representations were not false and fraudulent and the jury will answer the first issue 'No.' And at the request of the plaintiff, as follows: "If you find from the evidence that at the time of the execution of the contract to Hay and associates and up to and at the time of the execution of the deed to the New Era Building Company, that Murray and Hay represented and agreed that they would erect a building of the kind referred to in the written contract on said property, and that the erection of the building was held out to and accepted by Troxler as a part of the consideration moving and inducing him to execute the contract and deed, then I charge you to answer the fourth issue 'Yes.' If you should find from the evidence that at the time of the execution of the contract to convey the property, Murray represented that a company could and would be formed which could and would erect said building, when it was not in fact intended to form a company

for that purpose, but that the whole matter was a scheme to get the title to this property out of the hands of Troxler, and if you should further find that such misrepresentation moved Troxler to execute the contract, then I charge you to answer the first issue 'Yes.' If you should find from the evidence that at the time of the execution of the contract Murray represented that a company could and would be formed which could and would erect said building, when in fact he did not know and had no reasonable ground to believe such to be the fact, and that this whole matter was being worked to get the title to the property out of the hands of Troxler, and if you should further find that such representations moved and induced Troxler to execute the contract, then I charge you to answer the first issue 'Yes.' If you should find from the evidence that at the time of the execution of the contract to convey the property it was represented that a company could and would be formed which could and would erect the building thereon, when in fact it was never intended to organize such a company, but that the whole matter was a scheme to get the title to this property into the hands of W. E. Hay, and if you should further find that such representations moved Troxler to execute the contract, then I charge you to answer the first issue 'Yes.' "

The instructions given are simply sustained by the text writers and opinions of this and other courts. If, as the jury find, the plaintiff was induced by the representations and promise of Murray, representing the proposed corporation, that a building was to be erected thereon which would enhance the value of his other property, and at the time of making the representation and of accepting the deed the parties did not intend to erect and had no means for erecting such a building, or if Murray made the representation having no reasonable ground to believe that such was the intention, and that the purpose of Murray and Hay was by this means to

get the title to the property, he is entitled to relief in a court of equity. If having an honest purpose to carry out their contract the defendants obtained title to the lot and were thereafter unable to do so, the extent of the plaintiff's remedy would have been such damages as he sustained by the breach of the contract. It must be conceded that it would be difficult to fix the measure of such damages. Mere speculative damages could not have been recovered. The fraud consists in the fact found by the jury that the defendants at the time of making the representation and promise, which constituted the inducement to make the deed, did not intend to make good such representation and promise. It has been frequently held that when personal property has been obtained by such means the vendor may recover his goods. *Des Farges v. Pugh,* 93 N. C., 31, 53 Am. Rep., 446; *Hill v. Gettys,* 135 N. C., 373. It is equally well settled that a court of equity will cancel a deed obtained by such means. The charge fully and clearly presents the case in all of its aspects. His Honor properly told the jury to answer the second issue in the negative if they answered the first for the plaintiff. The judgment directs the reconveyance of the property upon the payment by the plaintiff to the defendants of the amount received by him, less the sum of $216 assessed by the jury as damages, etc., in response to the third issue. This we think correct, and is what the plaintiff expresses his readiness to do. The judgment further directs the sale of the property if the amount is not paid by a day fixed. The equity invoked by the plaintiff is rescission. He is entitled to be put back in his original position in respect to his property as near as may be. We do not think that he is entitled to have a sale. In this respect the judgment should be modified.

Affirmed.