Argued September 28, reversed November 9, 1915.

# MARSHALL *v.* HILLSBORO GARDEN TRACTS.*

(152 Pac. 493.)

**Cancellation of Instruments—Complaint.**

1. A complaint, seeking rescission of a contract for the purchase of land, which averred that plaintiff was induced to purchase by means of false representations, and recited the various false representations made, is sufficient where not attacked by demurrer.

**Vendor and Purchaser—Rescission—Right to Rescind.**

2. In a suit to obtain rescission of a contract for the purchase of land, evidence *held* to show that the only misrepresentations were as to matters of opinion.

**Vendor and Purchaser—Contracts—Rescission—Right to.**

3. A purchaser of land cannot rescind his contract on the ground that specific promises were not kept, where they were made in good faith and there was an attempt to keep them.

[As to liability of vendor for false representations innocently made, see note in Ann. Cas. 1913C, 63.

From Multnomah: GEORGE N. DAVIS, Judge.

Department 2.   Statement by MR. JUSTICE HARRIS.

This is a suit by W. E. Marshall against the Hills-boro Garden Tracts, a private corporation.

The plaintiff seeks to annul a land contract made with the defendant. On February 19, 1912, W. E. Marshall agreed in writing to purchase from the de-

---

*On future promises as fraud, see notes in 10 L. R. A. (N. S.) 640; 24 L. R. A. (N. S.) 735.

Statements regarding the future as fraud are discussed in note in 35 L. R. A. 420, 437.                                        REPORTER.

fendant the north half of tract 4, in block 8, of Hillsboro Garden Tracts, the purchase price being $687.50, payable in installments. A payment of $200 was made at the time of signing the contract. The plaintiff entered into possession of the premises and placed permanent improvements upon the land. On October 16, 1913, Marshall tendered his written contract to the defendant, offered to surrender all his interest in the land and betterments, and demanded a return of the $200 paid on the purchase price, together with reimbursement for the permanent improvements. This suit was commenced after the defendant declined to accede to the demands made upon it.

The complaint alleges that the defendant, by means of false representations, induced Marshall to enter into the agreement. The pleading recites that defendant represented that Marshall could get employment from defendant at the rate of $2.50 per day, and that there would be plenty of such work for plaintiff to do; that defendant would immediately grade the road along the west line of the tract, thereby providing drainage for the land; that defendant would grade Jackson Street and put down cement walks thereon at once; that the tract purchased by Marshall was all beaver dam land and very fertile, when in fact the land was very poor and does not grow good crops; and that there was wood enough on the tract to pay for the land, when in fact there was no marketable wood.

The answer denies the charge of fraud, and alleges that the plaintiff had been in possession of the premises, and had received and applied the rents and profits to his own use. The written agreement does not contain any of the representations recited in the complaint. The plaintiff obtained a decree canceling the contract and judgment, for the money paid on the pur-

chase price, and the value of the permanent improvements, aggregating $305.   The defendant appealed.

REVERSED.

For appellant there was a brief over the names of *Messrs. Huston & Huston, Mr. W. F. Magill* and *Mr. George W. Stapleton,* with oral arguments by *Mr. Samuel B. Huston* and *Mr. Oliver B. Huston.*

For respondent there was a brief over the names of *Messrs. Thacker & Hancock* and *Mr. George I. Brooks,* with an oral argument by *Mr. G. L. Thacker.*

MR. JUSTICE HARRIS delivered the opinion of the court.

1. The defendant did not demur to the complaint, but waited until the trial had commenced, and at that time objected to the introduction of testimony. The ruling made on the sufficiency of the complaint in *Cooper* v. *Hillsboro Garden Tracts, ante,* p. 74 (152 Pac. 488), is applicable to and controls the instant case. The complaint is sufficient to withstand the attack of a belated objection.

2, 3. Attention will first be directed to the evidence. Concerning the promised employment, the plaintiff testified that the selling agent represented that:

"There would be work on these lots [meaning the platted lots and tracts]," and "he said there would be bridges and streets, and he said there would be work at $2.50 a day, and this work was going to start just right away, and he said that he wanted to hurry and get the gardens in, to get them sold, as he wanted to start work on these improvements, as they would employ no one but the purchasers of the land, and we hurried, and that was the end of it."

It will be noted that the complaint alleges that the plaintiff could get employment, and that there would be plenty of work to do; but the evidence is not as broad as the complaint. It clearly appears that a bridge was built and work was done on streets, and the defendant did intend to give purchasers an opportunity to work on such improvements as might be made, before employing others. It is a fair inference from the testimony to say that at the time of entering into the contract, not only the defendant, but the plaintiff and other purchasers, believed that the future had much in store for them, and that their visions of prosperity faded only with the subsequent slump in real estate. There was an absence of intent not to make the improvements; and the defendant did intend to afford employment, although it did not accomplish all that was evidently expected.

Speaking of the road along the west line of his tract, Marshall said that the agent showed him "that road that they were going to put in there, the road that runs along my west line. He says: 'There is water on this land now, but when it is cleared up, you can drain that land in there'—it hasn't been drained yet, but it would drain when it was cleared up"—and "he said that they were going to drain it up."

It clearly appears that the defendant did not harbor any intention not to grade the road along the west line of the land because it did let a contract to G. Balliett and Fred Brethauer to clear out the street.

Continuing, the plaintiff explained the allegation relative to Jackson Street and the cement sidewalks, and stated that the selling agent pointed out some cement piled on Jackson Street, and declared "that they were going to build on Jackson Street. * * We

have the cement here and we are going to start this work just as soon as the weather will permit; we are going to grade the streets and put in the sidewalks.''

While wooden, and not cement, walks were built, the defendant did intend, when it made the contract with plaintiff, to lay cement walks because the corporation did in fact let a contract for laying cement walks, although the contractor failed to make the improvement.

The plaintiff was first informed of the land by representatives of the Ada Land Company, who gave to Marshall some advertising circulars, and also told him that the land was of the kind known as beaver dam land. Afterward the plaintiff was shown, not only the tract described in the contract, but also other lots and tracts owned by defendant. Marshall testified that the agent, when speaking of the tract in controversy, declared that:

''This land here will grow onions, potatoes, beans, anything that you are a mind to put in it; anything will do well. It is the richest ground in the State of Oregon. You can grow anything, it don't matter what you put in the ground; it will produce a good crop.''

The advertising literature placed in the hands of plaintiff contained a glowing word picture of Hillsboro Garden Tracts and fruit lands and, among other things, informed the reader that:

''Every foot of ground in the Hillsboro Garden Tracts is rich, virgin, fertile soil. It is very high in humus. Some of the tracts include beaver dam land.''

It does not satisfactorily appear that the identical tract sold to the plaintiff was represented to him to be beaver dam land. The defendant had purchased a large body of land known as the Connell farm and subdivided it into lots and tracts. About 40 acres of the

farm is of the quality known as beaver dam. A portion of the tract purchased by plaintiff is heavy stump land, while "the west part of it is slough." Marshall made a personal inspection of the premises before entering into the agreement, and he saw what he was buying. The advertising circular which he relied upon informed him of the truth when Marshall read the statement, "Some of the tracts include beaver dam land." The plaintiff and other interested witnesses described the soil as being of poor quality, but every disinterested witness, including persons who had previously farmed the premises and who ought to know, testified that the land was good. There is no evidence to sustain the allegation that defendant said there was wood enough on the property to pay for it. When the allegations of the complaint are kept in close association with the evidence, it will be seen that the defendant did not make a single representation of an existing or past fact of which the plaintiff can complain; and all the other statements were only predictions, or were expressions of opinion, or were declarations of what the defendant would do in the future. The plaintiff cannot rescind his contract by predicating fraud upon an opinion or prediction. It is contended, however, that the defendant represented that specified things would be done in the future, and that the promises were not kept. There are numerous holdings to the effect that a mere promise, not made a part of an agreement, will not authorize a rescission, and that a representation must be of an existing or past fact; and this view is illustrated in the following adjudications: *People* v. *Healy,* 128 Ill. 9 (20 N. E. 692, 15 Am. St. Rep. 90); *Harrington* v. *Rutherford,* 38 Fla. 321 (21 South. 283); *Estes* v. *Desnoyers Shoe Co.,* 155 Mo.

577 (56 S. W. 316); *Huber* v. *Guggenheim* (C. C.), 89 Fed. 598; *Farris* v. *Strong,* 24 Colo. 107 (48 Pac. 963); *Day* v. *Ft. Scott Investment Co.,* 153 Ill. 293 (38 N. E. 567); *Balue* v. *Taylor,* 136 Ind. 368 (36 N. E. 269); *Love* v. *Teter,* 24 W. Va. 741; *Dawe* v. *Morris,* 149 Mass. 188 (21 N. E. 313, 14 Am. St. Rep. 404, 4 L. R. A. 158); *Perkins* v. *Lougee,* 6 Neb. 220; *Orr* v. *Goodloe,* 93 Va. 263 (24 S. E. 1014). There is also a line of cases announcing that a false promissory statement may furnish the foundation for rescission if the promise is coupled with a representation that a certain condition of things exists at the time, as in *Reagan* v. *Hadley,* 57 Ind. 509; *Banque* v. *Brown* (C. C.), 34 Fed. 162. Many authorities adhere to a more elastic rule and declare that the making of promises, with no intention to perform, constitutes fraud which will warrant a rescission. Fair exemplifications of this doctrine may be found in *Lawrence* v. *Gayetty,* 78 Cal. 126 (20 Pac. 382, 12 Am. St. Rep. 29); *Goodwin* v. *Horne,* 60 N. H. 485; *Piedmont Land Improvement Co.* v. *Piedmont, F. & M. Co.,* 96 Ala. 389 (11 South. 332); *Witt* v. *Cuenod,* 9 N. M. 143 (50 Pac. 328); *Langley* v. *Rodriguez,* 122 Cal. 580 (55 Pac. 406, 68 Am. St. Rep. 70); *Hodsden* v. *Hodsden,* 69 Minn. 486 (72 N. W. 562); *Troxler* v. *New Era Bldg. Co.,* 137 N. C. 51 (49 S. E. 58); *Ansley* v. *Bank of Piedmont,* 113 Ala. 467 (21 South. 59, 59 Am. St. Rep. 122); *Touchstone* v. *Staggs* (Tex. Civ. App.), 39 S. W. 189; *Rogers* v. *Virginia-Carolina Chemical Co.,* 149 Fed. 1 (78 C. C. A. 615); *Ivancovich* v. *Stern,* 14 Nev. 341; *Cerny* v. *Paxton & Gallagher Co.,* 78 Neb. 134 (110 N. W. 882, 10 L. R. A. (N. S.), 640); *Chicago etc. Ry. Co.* v. *Titterington,* 84 Tex. 218 (19 S. W. 472, 31 Am. St. Rep. 39). The intention not to keep the

promise furnishes the essence of the fraud in the last-mentioned class of cases; and therefore the logical conclusion is, if there was an honest intention to keep the promise, the agreement will not be canceled, even though the promise was not fulfilled: *State Bank of Indiana* v. *Gates,* 114 Iowa, 323 (86 N. W. 311). The evidence does not show that the defendant made any statements, alleged and relied upon in the complaint, of what it would do in the future with an intention, entertained at the time, not to do what it said it would do. The plaintiff is not entitled to rescind the contract, and the decree is therefore reversed. REVERSED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE McBRIDE and MR. JUSTICE BEAN concur.