### PLANTERS BANK AND TRUST COMPANY v. ANNIE PIPKIN YELVERTON.

(Filed 18 April, 1923.)

**1. Appeal and Error—Issues—Courts.** ·

The submission by the court to the jury of a greater number of issues than those tendered by the appellant, to enable the parties to have the full benefit of their contentions to the jury, cannot be held for reversible error.

2. **Bills and Notes—Negotiable Instruments—Fraud—Promises—Representations.**

While the failure to perform a promise in the future cannot, as a general rule, be the basis of setting aside a transaction for fraud, it is otherwise if the fraud be predicated upon the nonperformance of a promise and the promise is shown to have been a device to accomplish the fraud; and where the defendant has been induced to give her promissory note for shares of stock in a corporation being organized, upon the false assurance that the stock was to be pooled and afterwards sold to subscribers, and that she would not have to pay anything upon the note, it may be shown as evidence. of fraud to invalidate the note, in the hands of a holder with notice of and bound by the defendant's equities, that the promise was made only as a design to procure the note, and without the promissor's intention to fulfill it.

3. **Bills and Notes — Negotiable Instruments — Fraud—Cancellation—Damages.**

One who has given her note induced by the fraudulent promise of another, upon which she has relied, and sufficient to invalidate the instrument, has the right to the cancellation of the instrument and avoid liability thereon.

4. **Bills and Notes—Negotiable Instruments—Endorsement—Equities—Statutes.**

Where the maker executes her promissory note to her own order and delivers it without endorsement, any person thereafter acquiring the instrument without endorsement takes it subject to the equities existing between the original parties, C. S., 3004, 3030; the Statute requiring that where the instrument is "payable to order" it is negotiated by the endorsement. C. S., 3010.

5. **Bills and Notes—Negotiable Instruments—Endorsees—Fraud—Pleadings—Burden of Proof.**

The burden of proof is on the plaintiff suing upon a negotiable note as endorsee to establish the-endorsement by a preponderance of the evidence, when the defendant denies the endorsement and pleads fraud.

6. **Appeal and Error—Instructions—Evidence—Immaterial Variations.**

An immaterial variance between the judge's statement of appellant's evidence in his charge and that given upon the stand will not be held for reversible error.

7. **Bills and Notes—Negotiable Instruments—Equities—Fraud—Evidence—Verdict.**

Where it is established by the verdict of. the jury that the plaintiff acquired the negotiable instrument sued on without endorsement and with knowledge of the equities existing between the original parties that would invalidate it for fraud, the admission of evidence relating to the alteration of the note after its delivery becomes immaterial.

8. **Instructions—Statutes—Appeal and Error.**

Where the trial judge has instructed the jury correctly but generally on the essential features of the cases, the charge will not be held for error upon appellant's exception that he had not explained to the jury the legal principles in conformity with the provisions of C. S., 564, when he has not submitted in apt time correct special prayers for instruction to such effect.

APPEAL by plaintiff from *Allen, J.,* at the October Term, 1922, of WAYNE.

The plaintiff alleged that the defendant executed and thereafter endorsed and transferred to it, before maturity, her promissory note in words and figures as follows:

"$5,000.                                                    May 26, 1920.

Nov. 15, 1920, after date, I, we, or either of us, promise to pay to the order of myself the sum of Five Thousand Dollars, for value received, payable at Planters Bank & Trust Company, Fremont, N. C., with interest from date at the rate of 6 per cent per annum until paid. The makers and endorsers of this note hereby waive demand of payment, protest and notice of protest, and hereby consent that time of payment may be extended without notice thereof.

ANNIE PIPKIN YELVERTON."

The defendant denied both the execution and the endorsement of the note, and alleged that the Cushing Petroleum Company by means of false and fraudulent representations had induced her to agree to execute her note upon the express agreement that its delivery should be conditioned upon the company's holding it until after the first of October and until the "pool stock" should be offered for sale to discharge the note; that the note had been materially altered since last seen by the defendant; that the sale of the stock was unlawful because the Petroleum Company was subject to and had not complied with C. S., 6363-6475 inclusive; that there was no contract in writing between the company and the defendant; that the company received a commission greatly in excess of the commission allowed by law; and that the note, if executed, was illegal, null and void. The issues were answered as follows:

"1. Was the note introduced in evidence by the plaintiff signed by the defendant, Annie Pipkin Yelverton, as maker? Answer: 'Yes.'

"1½. Did she endorse said note on the back? Answer: 'No.'

"2. If so, was the signature as maker of said note obtained by the agents of the Cushing Petroleum Company by misrepresentation and fraud? Answer: 'Yes.'

"3. If so, is the plaintiff bank the innocent holder of said note in due course and without notice of infirmities? Answer: 'No.'

"4. Was the note, after delivery to the said agents, altered by the insertion without the authority of the defendant of the words: 'Planters Bank & Trust Company, Fremont, N. C.?' Answer: 'Yes.'

"5. If so, did the plaintiff have notice of it? Answer: 'No.'"

Judgment for the defendant. Appeal by the plaintiff.

*Langston, Allen & Taylor for the plaintiff.*
*Dickinson & Freeman for the defendant.*

ADAMS, J. The first fifteen exceptions relate to the admission or rejection of evidence and require no special discussion. The evidence excepted to was competent as tending to show such knowledge by the plaintiff of the defendant's equities as amounted to bad faith in taking the note, or fraud in procuring its execution, or some incidental circumstance in corroboration of other testimony; and the excluded evidence which is the subject of exceptions 10, 11, and 11½ was not in any view competent against the defendant.

Equally untenable are the defendant's several exceptions to the issues which were submitted to the jury. The plaintiff tendered three, but the court submitted six with the manifest purpose of enabling the parties to have the full benefit of all their contentions before the jury. On what ground the plaintiff can legitimately complain of this is not perceived. *Patterson v. Mills,* 121 N. C., 258; *Pretzfelder v. Ins. Co.,* 123 N. C., 164; *Straus v. Wilmington,* 129 N. C., 99; *Holler v. Tel. Co.,* 149 N. C., 337; *Brewer v. Ring,* 177 N. C., 476.

Exceptions 24 to 29½ are addressed to the court's refusal to give certain prayers for instructions. The plaintiff claims to have been entitled to these instructions principally on the ground that there is no sufficient evidence of fraud, and for this reason it becomes necessary to examine the defendant's allegations as well as the evidence tending to support them. The defendant alleges: "That on or about 26 May, 1920, agents of the Cushing Petroleum Company approached the defendant and represented to her that the said company was offering for sale a limited amount of its capital stock known and designated by said company as 'pool stock'; that this pool stock was to be released for transfer or sale on 1 October, 1920, and that immediately after the release of said pool stock or contemporaneously with said release, the capital stock of the company would be offered for sale on the open markets; that if the defendant would execute a note to said company, certain shares of said pool stock would be issued by the company in her name and attached to said note which was to be held by said company and not to be transferred or sold; that upon the release of said pool stock a sufficient number of shares of the pool stock issued in the name of the defendant would be sold to pay off and discharge the said note of the defendant and the balance of the unsold stock would then be issued and delivered to the defendant; that the said agent further represented to the defendant that the property and other assets of the company so far exceeded its liabilities that when said stock was offered for sale its market value would be nearly three times its par value; that all of said representations were false and untrue, and were made with the intent and purpose of defrauding the defendant in the sale of said stock to her, as the defendant is informed and believes, and therefore alleges."

She further alleges that by these representations she was deceived

and induced to agree to execute her note with the express understanding that it should be held by the Petroleum Company until after the first day of October and until the "pool stock" should be offered for sale; that when the capital stock was sold the note and the "pool stock" which was not sold to discharge the note should be returned, and that the company failed and refused to abide by and perform its agreement.

There was evidence tending to show that the agents of the Petroleum Company when soliciting the execution of the note told the defendant she would never be called on for any money; that they wanted her to lend them her credit by executing the note which they agreed to return to her prior to the first day of October with certificates of stock attached; that they said they had made arrangements to take care of her note; that she "would not have to pay a penny"; that she never endorsed the note; and that it was altered by the insertion of "The Planters Bank & Trust Company" after she had signed it.

As a general rule fraud cannot be predicated upon promissory representations (*Pritchard v. Dailey,* 168 N. C., 330) because a promise to perform an act in the future is not in the legal sense a representation, but it may be predicated upon the nonperformance of a promise when the promise is a device to accomplish the fraud. 12 R. C. L., 254 *et seq.* The question involves the promissor's state of mind as a fact (for such condition of mind is a fact) and a misrepresentation of the state of one's mind is therefore a misstatement of an existing fact. 26 C. J., 1093; 8 W. L. R., 570. The principle is thus stated in *Hill v. Gettys,* 135 N. C., 373: "The general rule in regard to promises is that they are without the domain of the law, unless they create a contract, breach of which gives to the injured party simply a right of action for damages, and not a right to treat the other party as guilty of a fraud. But that proceeds upon the ground that to fail to perform a promise is no indication that there was fraud in the transaction. There may, however, have been fraud in it; and this fraud may have consisted in making a promise with intent not to perform it. To profess an intent to do or not to do, when the party intends the contrary, is as clear a case of misrepresentation and of fraud as could be made. A promise is a solemn affirmation of intention as a present fact." 1 Bigelow on Fraud, 484. (The author is discussing, of course, civil remedies.)

"When a promise is made with no intention of performing it, and for the very purpose of accomplishing a fraud, it is a most apt and effectual means to that end, and the victim has a remedy by action or defense." *Goodwin v. Horne,* 60 N. H., 485.

"The intent is always a question for the jury, and to determine whether the intent was fraudulent the jury have necessarily to look to the circumstances connected with the transaction or those immediately

preceding or following it." *Des Farges v. Pugh,* 93 N. C., 31; 53 Am. Rep., 446.

And in *Whitehurst v. Ins. Co.,* 149 N. C., 273, it is said: "It is not always required, for the establishment of actionable fraud, that a false representation should be knowingly made. It is well recognized with us that, under certain conditions and circumstances, if a party to a bargain avers the existence of a material fact recklessly, or affirms its existence positively, when he is consciously ignorant whether it be true or false, he may be held responsible for a falsehood; and this doctrine is especially applicable when the parties to a bargain are not upon equal terms with reference to the representation, the one, for instance, being under a duty to investigate, and in a position to know the truth, and the other relying and having reasonable ground to rely upon the statements as importing verity. *Modlin v. R. R.,* 145 N. C., 218; *Ramsey v. Wallace,* 100 N. C., 75; *Cooper v. Schlesinger,* 111 U. S., 148; Pollock on Torts, 7 Ed., 276; Smith on Fraud, 277, sec. 3; Kerr on Fraud and Mistake, 68."

These principles, we think, are applicable to the evidence; and besides, a careful reading of the record will show that not all the representations testified to in behalf of the defendant relate to the future. On the contrary there is the positive statement that the agents said they had made arrangements to take care of the defendant's note, and in connection with other evidence this may reasonably be construed as signifying their intention to return the note on or before the expiration of the time agreed on by the parties. In any event we cannot hold that there was no sufficient evidence for the jury to consider. *Troxler v. Building Co.,* 137 N. C., 51; *Leonard v. Power Company,* 155 N. C., 10; *Massey v. Alston,* 173 N. C., 215.

The plaintiff further insists that even if the agents of the Petroleum Company fraudulently induced the execution of the note the defendant suffered no loss and invokes the familiar doctrine that the injured party must show both reliance upon the fraudulent representation and damage resulting therefrom. But the defendant's present loss is her liability on the note, and if after establishing the fraud she is denied the right to cancel the alleged obligation and is required to pay it the inevitable result of the fraud will be the defendant's payment of $5,000 with interest in consideration of a "blue sky" promise.

The note was made payable to the order of the defendant, who is the maker, and the verdict shows that she did not endorse it; but the plaintiff says that by virtue of C. S., 3004 and 3030, it has a right to the defendant's endorsement. The latter section provides that where the holder of an instrument payable to his order transfers it for value without endorsing it, the transfer vests in the transferee such title as the transferrer had therein, and the transferee acquires in addition the

right to have the endorsement of the transferrer, but for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the endorsement is actually made. And sec. 3010 provides that an instrument "payable to order" is negotiated by the endorsement of the holder and is completed by delivery.

In several decisions this Court has held that a transferee without endorsement acquires, not the legal, but only the equitable title to the instrument, and that without such endorsement the holder's title is subject to the equities and defenses existent between the original or prior parties. *Steinhilper v. Basnight,* 153 N. C., 293; *Myers v. Petty, ibid.,* 462; *Critcher v. Ballard,* 180 N. C., 111. Elsewhere there is authority for holding that if the transferrer has the legal title it must pass by the transfer, subject nevertheless to existing equities. Brannan's Neg. Ins. Law, p. 155, sec. 49. So, in any event, the note not having been endorsed, the holder's title is subject to the equities on which the defendant relies.

We find no error in his Honor's instructions concerning the issue marked 1½. The defendant having denied the endorsement, and having pleaded fraud, the burden rested upon the plaintiff to establish the endorsement by a preponderance of the evidence. *Myers v. Petty, supra; Bank v. McEachern,* 163 N. C., 333.

Exceptions 33, 33½, 40, 47, 48, 49, which relate to his Honor's instructions on the second issue, have been disposed of substantially by what has been said. While the defendant did not testify in the express language used by his Honor we do not regard the variance such as entitles the plaintiff to a new trial. The expression complained of is closely connected with the other portions of the charge which fairly represent the defendant's evidence, and we fail to see any sufficient reason for holding that the jurors were probably misled.

As we understand the verdict exceptions 34-39, which are addressed to evidence relating to the alleged alteration of the note after its delivery, are immaterial in view of the jury's response to the issues numbered 1½ and 2, because if the note was not endorsed and if its execution was procured by fraud, the defendant is not liable to the plaintiff although the alleged alterations may not have been made.

Exceptions 41-46 were entered on the ground that the court did not explain to the jury the legal principles and present the contentions involved in the case as required by sec. 564 of the Consolidated Statutes. His Honor instructed the jury generally on the essential features of the case and if under these circumstances the plaintiff desired that any particular phase of the testimony or contentions be presented or more fully explained it should have submitted special prayers for instructions to such effect. *S. v. Merrick,* 171 N. C., 795; *S. v. Thomas,* 184 N. C.,

759; *Jarrett v. Trunk Co.,* 144 N. C., 301; *Butler v. Mfg. Co.,* 182 N. C., 552.

Upon due consideration of the record and the briefs we find no sufficient reason for disturbing the judgment of the lower court.