GOTTEBERG v. PARK TERRACE CO. , (No. 7217.)

(Supreme Court, Appellate Division, First Department. July 9, 1915.)

VENDOR AND PURCHASER ⬤⟹110—RESCISSION—FALSE REPRESENTATIONS.

An ignorant servant girl was induced to enter into a contract for the purchase of real estate payable in installments. To induce the sale defendant's salesman entered into a written agreement binding himself individually to make a resale of the property at 10 per cent. profit one year from date if desired. *Held*, that rescission on the ground of false and fraudulent representations that defendant would resell the property

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

if plaintiff should so desire was not warranted, but any remedy of plaintiff was by action for breach of the contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 196, 197; Dec. Dig. ☞110.]

Ingraham, P. J., dissenting.

Appeal from Special Term, New York County.

Action by Jettine Gotteberg against the Park Terrace Company. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and HOTCHKISS, JJ.

H. Schieffelin Sayers, of New York City, for appellant.
Julian M. Wright, of New York City, for respondent.

McLAUGHLIN, J. Action in equity to cancel two contracts for the purchase of real estate and to recover the sum of $785 paid thereon. On February 21, 1911, the plaintiff entered into a written contract with the defendant, by the terms of which she agreed to buy and defendant to sell two lots of land in the city of New York, payments therefor to be made in stipulated monthly installments, and title to remain in the vendor until the full purchase price was paid. The parties, on the 2d of November, 1911, entered into a similar contract for the purchase of another lot. At the time this action was commenced the plaintiff, pursuant to these contracts, had paid the defendant $785. The ground upon which she seeks to have the contracts set aside, as alleged in the complaint, is that defendant's duly authorized agent—

"falsely and fraudulently represented to plaintiff that as part of said agreement [the same allegation being made as to each contract] defendant was bound and obligated to plaintiff that, should plaintiff desire to cancel said purchase and resell the property at any time after one year from the execution of the same, then defendant would sell said parcel of property on behalf of plaintiff at a profit of plaintiff of at least 10 per cent., and that plaintiff could not in any case lose any of the money she might pay to defendant on account of said purchase."

The defendant was represented in the transaction with the plaintiff by one Skold, who was in the employ of John W. Paris & Son, the defendant's sales agent for the lots in question. In support of her alleged claim the plaintiff introduced in evidence the following memorandum, which was given her by Skold upon the execution of the first contract:

"Feb. 21/11.

"John W. Paris & Sons, Inc.

"It is agreed and understood that, should Miss Jettine Gotteberg, the purchaser of lots 1666 and 1667, Park Terrace property, Flushing, L. I., desire to sell the same one year from this date, the lots will be sold by me at a profit of at least 10 per cent.

"40 days' notice in such case.

"Edmund Skold,
"C/o John W. Paris & Son."

No such memorandum was given upon the execution of the second contract, but the plaintiff testified that on that occasion Skold told her

that *he,* and then that *they,* referring to the defendant, would resell the property for her at a profit of $50, if she would keep it for three months.

The plaintiff, a Norwegian, came to this country in 1907, and at the time the contracts were executed spoke and read the English language only fairly well, for which reason the conversations leading up to their execution were carried on partly in English and partly in Swedish. She testified that Skold came to see her three or four times and told her she ought to invest her money in real estate, to which she replied she did not want to invest her money in that way unless she was sure she could get it back after a year, if she needed it; that he said, if she bought the property which he had for sale, she would make from 20 to 30 per cent. profit; that the company's contract was better than contracts of other real estate dealers, and if she needed her money they would guarantee she could get it back after a year with an increase of 10 per cent. at least; that he would give her an agreement to that effect; and she, relying upon this statement, made the purchase and took the agreement, copy of which has been set forth.

It will be noticed that the memorandum signed by Skold does not purport to bind anybody but himself; but, assuming that she understood it bound the defendant, and that Skold was authorized to make such agreement, I do not think it enables the plaintiff to maintain this action. It was an agreement to do something in the future, and if defendant has failed to carry out its agreement, then plaintiff's remedy is to recover damages for a breach of contract. There is not a particle of evidence in this record which would justify a finding that plaintiff was induced to enter into the contract by reason of any fraudulent representation. An agreement to sell property in the future, as an inducement for one to purchase, does not constitute a fraud in the execution of the contract in case of a failure to sell in the future. It, at most, is a breach of contract, and nothing else.

The record is silent as to the value of the lots in question, and if the action were treated as one to recover damages for breach of contract, it would be impossible to compute the damage.

I think the judgment appealed from should be reversed, the findings tending to establish fraud on the part of the defendant, and the conclusions of law that the plaintiff is entitled to recover, should also be reversed, and the complaint dismissed, with costs.

CLARKE, SCOTT, and HOTCHKISS, JJ., concur.

INGRAHAM, P. J. (dissenting). The plaintiff on February 21, 1914, had been in this country four years, having been born in Norway, and was a servant with a private family in this city. An agent of the defendant came to the house at which plaintiff was employed and sold lots to the other servants in the house. He represented to the plaintiff that certain lots he had for sale were valuable, and when the plaintiff said she did not have much money, and did not care to invest money in the lots, he said that plaintiff would make so much money, it was such a good bargain, that after a year, if plaintiff wanted to sell, he

would give her back the money at 10 per cent.; that they would guarantee her money back with 10 per cent. at least; that she need not be afraid for her money, she would not lose a cent of it; that all she would take a chance was to make money on it. On this statement the plaintiff signed the contract and paid her money. The conversation was partly in Swedish and partly in English, and the plaintiff did not understand all in English. The paper which plaintiff was induced by the defendant's representative to sign was dated February 21, 1911, and by it defendant agreed to sell and plaintiff to purchase a lot in what was described as the property of the Park Terrace Company in the borough of Queens for $1,200; $120 to be paid on signing the contract, and $15 per month, with a provision there if plaintiff should fail to make such payments, or any of them, when the same should become due, then the contract should be null and void, and the amounts paid to the vendor should be forfeited to the vendor, at its option, as liquidated damages. There was nothing in this contract by which the plaintiff could get her money back, but a stringent forfeiture clause, or, at the option of defendant, the balance should at once become due and payable. At the time this contract was executed defendant's agent gave plaintiff an instrument in writing which provided that, if plaintiff desired to sell the property one year from date, the lots will be sold at a profit of at least 10 per cent. This was signed by the agent individually, so as not to bind the defendant.

The court found that the defendant's agent represented to the plaintiff that if she would sign this contract the owners of the property thereby contracted and would be bound and obligated to resell the property at any time after the expiration of one year and return the money with 10 per cent. profit; that plaintiff relied on these representations in making the contract and in making these payments; that the representations were false, and known to the agent to be false, and were made with intent to deceive. This was in the nature of a promise, but was a representation as to what rights the plaintiff would have under the contract he induced the plaintiff to sign, and which she supposed she was getting. Here was a woman that had been but a few years in this country, with a limited knowledge of English, without knowledge of business or real estate transactions. She was induced by defendant's agent to sign this contract on the representation that the vendors would pay her money back at the end of a year if she desired it, when the contract contained no such provision, but forfeited all payments made, or made her at once liable for all the unpaid installments if she made any default in payments of an installment or interest or taxes.

Considering the circumstances, the condition of the plaintiff, and her limited knowledge of English, that she acted without advice of any kind, I think the finding of the Special Term is sustained by the evidence. It was an obvious fraud on this servant girl, but a few years in this country, to induce her to sign such a contract, based upon the representation that it bound the vendors to return her her money with 10 per cent. profit at the end of a year. The action is not to recover damages for fraud, but to cancel a contract obtained from an ignorant woman in a menial position, by falsely representing that it gave

her rights which it did not give. In such an action it is not necessary to prove damage. It is sufficient to show that the contract is not what it was represented, and was obtained by the false representation, which was relied on, and which was known to be false when made. The contract having been obtained by the fraud of the agent representing the defendant, the defendant could not hold the plaintiff to the contract without adopting the means by which it was procured.

I think the judgment was right, and it should be affirmed, with costs.