Argued October 9; affirmed November 26, 1929

JESSIE P. SHARKEY *v.* THE BURLINGAME CO.

(282 Pac. 546)

For appellant there was a brief over the names of *Messrs. Senn & Recken, Messrs. Beach, Simon & Greene* and *Mr. W. B. Shively* with an oral argument by *Mr. F. S. Senn.*

. . For respondent there was a brief over the name of *Mr. John F. Conway* with an oral argument by *Mr. P. J. Gallagher.*

RAND, J. This is a suit in equity to rescind two contracts for the purchase of two lots in the city of Portland and to recover $362.50 paid thereon. The stipulated price of the two lots was $775 and $675, respectively, of which plaintiff paid at the time of entering into the contracts the sums of $193.75 and $168.75. The balance of the purchase price, with interest, was, by the terms of the contracts, made payable in stated monthly instalments.

The grounds upon which the alleged right to rescission is based, as alleged in the complaint, are that plaintiff was induced to enter into the contracts and to make said payments by representations of defendant's agents that if she would enter into said contracts and make said payments, Clarke, as defendant's sales agent, would resell the property for her at a profit before any of the other instalments stipulated in the contracts became due; that said representations so made were false and fraudulent in that they were made with no intention of performance and for the purpose of inducing the plaintiff to enter into said contracts; that she believed said representations to be true and, in reliance thereon, executed the contracts and made said payments.

Defendant's answer admits the execution of the contracts and the payment of the money, as alleged in the complaint, but denied that the representations were made and set up as its first affirmative defense that the negotiations for the sale of the property to plaintiff were made through one N. B. Clarke, who was an independent contractor over whom the defendant had no control and at the time of plaintiff's entering into the contract was exercising an independent calling, and, as a further answer and cross-complaint, defendant set up said contracts, plaintiff's failure to pay the instalments falling due thereunder, and prayed for a strict foreclosure of the contracts, and for attorney's fees, all of which allegations were put in issue by the reply and, upon the trial, a decree was entered in favor of plaintiff rescinding the contracts and requiring the defendant to pay plaintiff the amounts paid thereunder.

The evidence shows that the representations complained of were made by Ennis and Heckes, who were employed by N. B. Clarke, defendant's sales agent of the lots in question, and the evidence offered by plaintiff of the representations made was somewhat broader and more inclusive than the allegations of her complaint. The proof showed that these agents not only represented that the defendant would resell the property and protect her from payments subsequently falling due under her contracts but also that the defendant, at the time of these transactions, was actually engaged in reselling other lots which had been sold under the same terms and conditions and under like promises, and this representation of the course of business and of the existing practice in which it was claimed the defen-

dant was then engaged was further coupled with the promise that if plaintiff contracted for the purchase of the lots in question the same course of business would be followed in her case. That these very representations as claimed by plaintiff were actually made is not disputed in the evidence by defendant. Defendant practically concedes that they were made but contends that they were evidence of a contract which the agents had no authority to enter into and, therefore, are not binding upon the defendant. The defendant also contends that a promise of this character even if made fraudulently and for the purpose of inducing another person to enter into a contract and are made with no intention of performing are not such fraudulent representations as will support a suit to rescind a contract fraudulently induced thereby.

Before deciding these contentions other facts in evidence should first be stated. Defendant was the owner of two tracts of land and employed Clarke as its sales agent to sell the land in lots or parcels and entered into a contract with him in which it was agreed that he should offer the lots for sale at the prices scheduled in his contract; that 25 per cent of the scheduled price should be paid by the purchaser at the time of sale and be retained by Clarke as a commission; that at the time of the payments the defendant should enter into a written contract with the purchaser of each lot which should provide for the payment of the balance of the purchase price with interest in monthly instalments and that a discount of 5 per cent should be allowed the purchaser if he paid all of said balance within 60 days from the date of the sale. The Clarke contract also provided that Clarke and persons em-

ployed by him should make no misrepresentations and that if any misrepresentations were made Clarke should save and hold defendant harmless for any damages resulting therefrom and to that end should furnish defendant a surety bond conditioned that he would defend all suits, actions and proceedings brought against defendant by any purchaser because of any misrepresentations or acts of his or his employes in making said sales. It also provided that if the purchaser was financially unable to make the payments or if any misrepresentations had been made the defendant could cancel its contracts with the purchasers and repay them the amounts paid and that when that was done Clarke should repay defendant the initial payment which had been paid by such purchasers and retained by him.

The evidence further shows that Clarke employed a number of salesmen and used, in selling the property, what is referred to here by both plaintiff and defendant as the "lunch and lecture system." A part of this system was to employ various persons to go among their friends and acquaintances and ask them, as a personal favor to such agent, to go and examine the property and attend one of these "lunch and lecture" courses which was to be held at some place on the property; that free transportation was furnished to every person consenting to go to listen to the lecture and the agent was paid 50 cents per head for every person induced to go whether they purchased property or not; that as a means of inducing people to go the agent was instructed to inform every one of such persons that the defendant was not only selling the property but was also engaged in making resales of it and that any person purchasing the property from defen-

dant would purchase it with the understanding that defendant would resell the property if requested by the purchaser at any time within four weeks thereafter; that plaintiff was one of the persons employed by Clarke to solicit prospective purchasers and induce them to attend the lectures, and she did induce others to attend and made said representations to all of them, believing that defendant was actually engaged at the time in making such resales and that the promises were made in good faith and would be performed and, so believing, became herself a purchaser of the two lots in question.

At the time the contracts were entered into between plaintiff and defendant, a long contract in writing was submitted to her by defendant for execution. It contained a provision reciting that "no statements or representations of any kind or nature made by vendor's agents or employes and not contained herein shall be binding upon vendor, its successors or assigns and all agents or employes are strictly prohibited from promising any purchaser a resale of said property." Defendant testified that at the time of signing said contract she was not permitted to read it and signed it with no knowledge that it contained said provisions and did not obtain such knowledge until after a copy had been furnished her. Defendant's own evidence shows that at or about the time of the transactions referred to numerous complaints were made by other purchasers and that in some instances the moneys paid by such purchasers were refunded.

It is uniformly held that where a person by false representation and deceit induces another to his injury to part with his money or property or to do an act in reliance upon such representations he will be

liable in a common law action for deceit. In order to maintain such action all of the common law elements of an action for deceit must be present. These are representation, falsity, scienter, deception and injury: *Reno v. Bull,* 226 N. Y. 335; *Arthur v. Griswold,* 55 N. Y. 400. If any of these elements are lacking, the action will not lie. The gist of the action is fraud and the representations must have been made with knowledge of their falsity or under circumstances from which the law will impute knowledge. It is well settled in this state that knowledge will be imputed to one who, for the purpose of inducing another person to act, makes a false representation of a material fact as of his own knowledge without knowing whether it is true or false: *Cawston v. Sturgis,* 29 Or. 331 (43 P. 656); *Vaughn v. Smith,* 34 Or. 54 (55 P. 99); *Bonelli v. Burton,* 61 Or. 429 (123 P. 37); *McFarland v. Carlsbad Sanatorium Co.,* 68 Or. 530 (137 P. 209); Ann. Cas. 1915C, 555; *Robertson v. Frey,* 72 Or. 599 (144 P. 128); *Burke v. Pardey,* 125 Or. 245 (266 P. 626). Ordinarily, false promises are not fraudulent nor evidence of fraud and only false representations of past or existing facts are actionable, but:

"* * * when a promise is made with no intention of performance, and for the very purpose of accomplishing a fraud, it is a most apt and effectual means to that end, and the victim has a remedy by action or defense. * * * If the payee had no intention to buy the spring-beds, and used the promise for the purpose of inducing the defendant to buy the invention and give the notes, and the defendant, relying upon the promise, gave them, it was evidence of fraud.": *Goodwin v. Horne,* 60 N. H. 485.

The above was held in *Elastic Paint & Mfg. Co. v. Johnson,* 127 Or. 647 (271 P. 996), to be a true state-

ment of the law applicable to a promise made with no intention of performance and for the very purpose of perpetrating a fraud.

While there are authorities holding to the contrary, we think the true rule is that when one promises another to do something in the future as a consideration or inducement for the latter to part with his money or property or do an act in reliance thereon and makes the promise the medium of a deception and at the time of making the promise the promissor has no present intention to perform, the transaction is fraudulent and that the existence of the intent not to perform the promise at the time of its making makes the fraud. See cases cited by Mr. Justice HARRIS upon this point in *Marshall v. Hillsboro Garden Tracts,* 78 Or. 89 (152 P. 493). See also *Sallies v. Johnson,* 85 Conn. 77 (81 Atl. 974); *Rogers v. Virginia C. C. Co.,* 149 Fed. 1 (78 C. C. A. 615); *Barnes v. Starr,* 64 Conn. 136 (28 Atl. 980); *Spencer's Appeal,* 77 Conn. 638 (60 Atl. 289); *Dunham v. Cox,* 81 Conn. 268 (70 Atl. 1033); *Edington v. Fitzmaurice,* 29 L. R. 483; 1 Storey's Equity Jurisprudence, 14 ed., §.277; 12 R. C. L., p. 257, and authorities there cited.

In *Jennings v. Jennings,* 48 Or. 69 (85 P. 65), which was a suit to set aside a deed that a wife had obtained from her husband upon her promise to resume marital relations with him which she at the time had no intention of performing and which, after obtaining the deed, she refused to perform, it was held that her promise, it having been made with no intention of performance in order to obtain the property, was fraudulent and entitled the husband, upon her failure to perform, to have the deed set aside and canceled. There were in that case other circumstances such as the fact of the

wife maintaining unlawful relations with a paramour. We think the fact of her having such relations merely aggravated the case but did not change the rule which would have been followed in the case if those conditions had not existed.

It was also held in *Parrish v. Parrish,* 33 Or. 486 (54 P. 352), that while a mere failure to fulfill a promise is not fraud, yet where the grantee had induced her husband to convey property to her by an oral promise which she had no intention to perform that she would manage the property for him and hold it for a particular purpose, a promise so made was fraudulent and, upon her failure to fulfill the promise and her subsequent claim that she was holding the property as her own, the law would raise a constructive trust in favor of the heirs at law of the grantor. In that case the court recognized the distinction that if she had honestly intended to fulfill the promise at the time she made it there would have been no fraud or deceit and, upon her subsequent failure to perform, no trust would have resulted from the transaction because not in writing. See *Hornbeck v. Crawford,* 130 Or. 230 (279 P. 870). While the facts in the two cases last cited are not analogous to those in an action for deceit based upon a fraudulent promise, those cases are authority for holding that a promise made with no intention to perform for the purpose of inducing and which does in fact induce another party to act to his damage is fraudulent. See also *Gaffney v. Gaffney,* 51 Or. 567 (94 P. 561), in which this court, speaking through Mr. Justice EAKIN, said:

"It is apparent that it was a preconcerted plan on the part of Bridget, Michael, and Daniel to secure from the plaintiff the title to the home place, and their

professions of friendship, the influence of the friends, and the promise of renewed family relations were all made in bad faith, and without any intention to fulfill the same. And such false professions of restored, friendship and marital relations made by the wife to the husband, and of renewed friendship and restoration of family relations by the sons to the father, with no intention by either to fulfill them, but made only to influence the husband and father to convey the land to the sons, and, upon obtaining the deed, immediately renewing hostilities and estrangements against him, amounts to a fraud upon him, and are sufficient to entitle him to relief.''

While in the last case cited the transactions were between close relatives, which relationship would naturally create a trust and confidence between the parties, the principle ought to be the same where the transaction is between strangers for, if a person is induced to act in reliance upon a false representation, the inducement results through confidence in the truth of the representation and the defrauded party is victimized as much in one case as in the other.

In the instant case the representation relied on was not only a promise to resell but it was shown to have been accompanied with a further statement of defendant's agents that defendant or defendant's sales agent Clarke was at the time engaged in reselling other lots for other purchasers which had been bought under similar promises. This was a representation of an existing fact of a practice in which defendant's agents falsely and fraudulently represented to plaintiff that defendant or Clarke was then engaged. This was more than a promise. It was a representation and, since it was false and was made to induce and did induce

plaintiff to buy the property, it was actionable: *Clydesdale v. Paton,* 1896 A. C., p. 394; *Kettlewell v. Refuge Assurance Co.,* 1908, 1 K. B. 545.

This court said in *Anderson v. Adams,* 43 Or. 621 (74 P. 215), and the same statement was quoted with approval and followed in *McFarland v. Carlsbad Sanatorium Co.,* supra, that:

"* * * To constitute a fraud by false representations, so as to entitle the plaintiff to relief three things must concur: (1) There must be a knowingly false representation; (2) the plaintiff must have believed it to be true, relied thereon, and have been deceived thereby; and (3) that such representation was of matter relating to the contract about which the representation was made, which, if true, would have been to plaintiff's advantage, but, being false, caused him damage and injury."

■ All of these elements exist in the instant case and, if this had been an action for deceit, the facts constituting the fraud would have been sufficient to have sustained the action. This, however, is a suit to cancel or rescind the contract upon the ground of fraud and a distinction exists between a suit to rescind and an action for deceit. The gravamen of an action for deceit is intentional fraud, and mere negligence is not such fraud even though in some circumstances it might be taken as evidence of fraud. It must be intentional fraud as distinguished from misjudgment or want of care: *McFarland v. Carlsbad, etc.,* supra; *Kountze v. Kennedy,* 147 N. Y. 124, 129; *Reno v. Bull,* 226 N. Y. 546; *Hindman v. First Nat. Bank,* 112 Fed. 931; *Derry v. Peck,* 14 App. Cas. 337. See also an exceedingly valuable discussion of many of these questions by Mr. John Lehman in the August, 1929, number of the United States Law Review, page 385.

■ A suit for rescission is a disaffirmance or repudiation of the contract and not an affirmance of it as is an action for deceit. Rescission is often granted in cases where an action for deceit could not be maintained. The right of rescission does not, as the right to recover damages in a common law action for deceit, depend upon fraud, for if the transaction was the result of a false representation of a material fact it cannot stand against the injured party's right to rescind, however honestly made. The basis of a suit in equity to rescind is not, as pointed out by the authorities next cited, actual fraud, not whether the party making the statement knew it to be false but whether the statement made as true was believed to be true, and, therefore, if false, deceived the person to whom it was made. In such a case equity will rescind although there was no fraud: *Hindman v. First Nat. Bank,* supra; *Derry v. Peek,* supra; *Cahill v. Applegarth,* 98 Md. 493; *Trimble v. Reed,* 97 Ky. 713; 2 Pomeroy's Equity, 3 ed., § 885.

In *Derry v. Peek,* supra, in considering the distinction between an action for deceit and a suit to rescind, the court said:

"* * * The principles which govern the two actions differ widely. Where rescission is claimed it is only necessary to prove that there was misrepresentation; then, however honestly it may have been made, however free from blame the person who made it, the contract having been obtained by misrepresentation cannot stand."

In the Hindman case, LURTON, circuit judge, afterwards an associate justice of the United States supreme court, said:

"* * * Such an action (an action for fraud and deceit) differs essentially from one brought for

rescission of a contract on the ground of misrepresentation. In the latter kind of suit it is immaterial whether the representation was made dishonestly or not. If the contract was obtained by misrepresentation, however honestly made, it cannot stand. But, when the action is for fraud and deceit, it is not enough to show that the representation was untrue; for, if it was honestly believed to be true, that is a good defense: *Derry v. Peck,* cited above. But a representation recklessly made, without knowledge of its truth, could not be a statement honestly believed: *Cooper v. Schlesinger,* 111 U. S. 148, 4 Sup. Ct. 360 (28 L. Ed. 382). 'Fraud must concur with the false statement in order to give a ground of action.': *Evans v. Collins,* 5 Q. B. 804, 820; *Pasley v. Freeman,* 2 Smith, Lead. Cas. 74.''

In the same case, he said:

''* * * One who has been induced by false representations to buy property has open to him no less than three remedies. He may rescind and sue at law for the consideration, he may bring an equitable suit for rescission and obtain full relief, or he may retain what he has received and bring his action for fraud and deceit. The first two kinds of relief lie, as is most evident, only against the vendor. The third will lie against either the vendor or any third person through whose false representations, directly made, the plaintiff has sustained damages.''

In support of its position defendant cites and relies on *Elastic Paint & Mfg. Co. v. Johnson,* 127 Or. 647 (271 P. 996); *O'Neil v. Washelli Cem. Assn.,* 138 Wash. 566, and *Gotteberg v. Park Terrace Co.,* 168 App. Div. 800, affirmed by the court of appeals in 222 N. Y. 600. Only the last case sustains defendant's position and the authority of that case is somewhat weakened by the fact that the decision was not unanimous in either court. The presiding judge of the

Appellate Division wrote a dissenting opinion and in the court of appeals it was affirmed by four of the judges, two dissenting and one not sitting. In *Elastic Paint & Mfg. Co. v. Johnson,* supra, which was an action to recover on two trade acceptances, the promise relied on was held to be merely the personal promise of a salesman of plaintiff and to have been made by such salesman after the contract had been completely performed by plaintiff. The goods for which the acceptances were given had been shipped by plaintiff and accepted by defendant before the promise was made, the promise being neither a part of the order nor of the trade acceptances and the amount for which the trade acceptances were given being then due and payable. The promise relied on in that case was no part of the consideration for the goods and was not the inducement which impelled the defendant to give the acceptances. The O'Neil case is not analogous. In that case the promise relied on was purely personal and not intended to bind the principal and it was an action at law for rescission and the testimony showed that the plaintiff, with full knowledge that the promise was not being complied with, ratified the contract by continuing to make payments thereunder.

This being a suit in equity for rescission, the vendor with whom the contracts were made and being the real party in interest is obviously the only person against whom the suit could be brought. The representations relied upon were false and related to the contracts in question. The truth of these representations would have been of advantage to plaintiff, and, because of their falsity, she sustained damage which makes the representations material. If these representations had not been made, the evidence shows that plaintiff would

not have entered into the contracts or paid the moneys. They, therefore, were the inducing cause which impelled her to enter into the contracts.

■ Under these facts plaintiff is entitled to have the contracts canceled and to a return of the moneys paid, if defendant is responsible for the acts of the parties who made the false representations and if the stipulation in the contracts to which we have referred, and which will later be considered, does not defeat such right. Before noticing these contentions, however, one other contention of defendant should first be disposed of. It contends that the representation complained of, if it is anything, constitutes a contract for the breach of which, if the contract is valid, an action would lie but would not support an action for deceit or a suit for rescission. We find no merit in this contention for the reason that if the making of this representation could, under any circumstances, amount to a contract it would not be binding upon the defendant for the agents making the representation had no authority to enter into a contract of that nature. What remedy, if any, plaintiff might have against the agents making the representations in an action on contract or in tort is of no importance in the instant case because she is not seeking such redress or attempting to enforce any obligation against them.

■ The general rule is that fraudulent misrepresentations inducing the person to whom they are addressed to buy property or enter into a contract with some one other than the maker of the representations will not give the defrauded person ground for rescinding the transaction. Professor Williston states three exceptions to this rule. These are:

"(1) Where the representations were made by one who was an agent or purported to be an agent of the

person receiving the benefit of the fraud. It is immaterial for this purpose whether the representations were made within the apparent or actual scope of the agent's authority. The principal though innocent at the outset renders himself a party to the fraud if after knowledge of how his advantage was obtained he fails to surrender it.

"(2) Where, though the misrepresentations were not made by one acting as agent of the party benefited, the latter was or should have been cognizant of them, or was the cause of their being made, or gave no value for what he received, or gave no value until after he had learned of the misrepresentations.

"(3) Where the misrepresentations induce a mistake of both parties to the contract of so vital a character as to justify relief on that ground."

3 Williston on Contracts, § 1518.

█ The facts of this case bring it within the first exception stated for here the defendant, whether innocent at the outset or not, received the benefit of the fraud and made itself a party to the fraud after knowledge of how its advantage was obtained by failing to surrender it. Moreover, there was evidence in the case tending to show, and the learned trial judge found, that the defendant, knowing that the misrepresentations were to be made and intending that they should be made, sought to protect itself from liability by contracting with Clarke, its sales agent, that no misrepresentations should be made and by requiring him to execute a bond to protect it against the consequences of any misrepresentation if made by him or his employes. While we make no finding upon this question, it not being necessary for our decision, yet there were many circumstances in the case from which the fact found could reasonably be inferred.

■ While the agents had no authority to enter into a contract of that nature, they did have authority to enter into contracts for the sale of the property. Defendant's contract with the sales agent shows that Clarke was not a mere broker but that he was authorized to make sales of the property for defendant and to employ others to assist him in so doing. While so engaged, Clarke and his employes were transacting the business of their principal and the principal is responsible for their representations, if false and if acted upon, while they were engaged in the sale of the property whether the agents were authorized to make such representations or not. It is well settled that a principal or an employer, while ordinarily not responsible for frauds or torts committed by his agents or servants, while engaged in their own individual purposes or profit and not in the interests of their principal or employer, is liable for the torts of his servants or agents and for their frauds when committed in the interests of the principal or employer. As was said in *Pearson v. Dublin,* (1907) A. C. 351, in referring to the case of *Cornfoot v. Fowke* (1) (1840) 6 M. & W. 358:

"* * * If it was supposed to decide that the principals and agent could be so divided in responsibility that—like the schoolboy's game of 'I did not take it, I have not got it'—the united principal and agent might commit fraud with impunity, it would be quite new to our jurisprudence."

and it was held in that case that the question whether the principal is answerable for the act of an agent in the course of his business was settled as early as Lord Holt's time, and it was held:

"* * * But with respect to the question whether a principal is answerable for the act of his agent in the course of his master's business and for his

master's benefit, no sensible distinction can be drawn between the case of fraud and the case of any other wrong.''

And as said by Kerr on Fraud and Mistake, p. 426, which was quoted with approval in *White v. Gordon*, 130 Or. 139 (279 P. 289):

''A principal is liable to third persons for frauds, deceits, concealments, torts and omissions of duty of his agent, when acting in the course of his employment, although the principal did not authorize or justify or participate in, or indeed know of such misconduct, or even if he forbade the acts or disapproved of them.''

Defendant's last contention is that this suit cannot be maintained because of the stipulation in the contract entered into between plaintiff and defendant that ''no statements or representations of any kind or nature made by vendor's agents or employes and not contained herein shall be binding upon vendor, its successors or assigns and all agents or employes are strictly prohibited from promising any purchaser a resale of said property.'' There is a line of authorities holding that it is competent for parties to enter into a contract stating that no representation, agreement or promise has been made except those stated in the contract and that if the contract contains such a promise the stipulation is enforceable and will bar a suit for rescission because of any antecedent fraudulent representation, agreement or promise not contained in the written contract. This seems to be the doctrine in Massachusetts (*Sullivan v. Roche*, 153 N. E. 549; *Colonial Dev. Corp. v. Bragdon*, 219 Mass. 170 (106 N. E. 663), and *O'Meara v. Smyth*, 243 Mass. 188 (147 N. E. 294); in *Georgia Threshing Machine Co. v. Broach*, 137 Ga. 602 (73 S. E. 1063); and in

New Jersey. (*Edison Fixture Co. v. Copoulos,* 127 Atl. 551), and perhaps in some other states. The ground for decision in those cases seems to be that, where parties have made a definite agreement in which they state that no representations have been made other than those contained in the contract, the contract, as made, should be enforced in order that the relations arising from it should be certain and definite and that to permit parol testimony to show prior representations, after the parties had stipulated that there were no such representations, would defeat the purposes of the contract and contradict its very terms and, therefore, that parol evidence of antecedent fraud or fraud which entered into the inception of the contract and not into its execution is inadmissible, although if it entered into the execution of the contract it is admissible. This doctrine has not been followed by a majority of the courts of equal authority and is not the rule in England or in most of the states and has not received the support of the leading text writers in this country. The majority of the decisions state the rule to be that if a contract is induced by fraud, whether the fraud enters into the execution of the contract or is antecedent to it, the contract cannot stand regardless of any stipulation to the contrary contained in the contract and that, if the effect of the stipulation is such that it amounts to a waiver of fraud practiced on the complainant and which induced him to enter into the contract, this clause is of no effect because being against public policy and because allowing the guilty party to profit by his own wrong, and denying the application of the principle that fraud vitiates any contract. Holding to this effect are *Haight v. Hayt,* 19 N. Y. 464, *Bridger v. Goldsmith,* 143 N. Y. 424 (38

N. E. 458); *Universal Fashion Co. v. Skinner*, 64 Hun.
(N. Y.) 293 (19 N. Y. S. 62); *Jackson v. State*, 205
N. Y. Sup. 658; *Pearson & Son, Ltd., v. Lord Mayor,
etc., of Dublin*, (1907)A. C. 351; *Jordan v. Nelson*, 178
N. W. 544 (Iowa); *Case Threshing Machine Co. v.
McKay*, 161 N. C. 584 (77 S. E. 848); *Whiting v.
Squeglia*, 70 Calif. App. 108 (232 P. 986); *Thompson
Co. v. Schroeder*, 131 Minn. 125 (154 N. W. 792);
*Dietrich v. Rice*, 115 Wash. 365 (197 P. 1); *Newman v.
Smith*, 77 Cal. 22; *Hofflin v. Moss*, 67 Fed. 440; *Elliott
Supply Co. v. Green*, 35 N. D. 641 (160 N. W. 1002);
*Berrendo Irrigating Farms Co. v. Jacobs,* 23 N. M. 290
(168 P. 483); *N. W. Rug Mfg. Co. v. Leftwich Hard-
ware & Furniture Co.*, 2 S. W., 2d series, 1109 (Ark.);
*Shepard v. Pabst*, 149 Wis. 36; Williston on Contracts,
§ 811; 5 Wigmore on Evidence, 2 ed., § 2439; 2
Meachem on Agency, 2 ed., § 1997; 14 Am. & Eng.
Ency. of Law, 2 ed., 20. See also *Arnold v. National
Analine & Chem. Co.*, 20 Fed. 365.

The majority rule has been adopted in this state;
for in *Carty v. McMenamin & Ward,* 108 Or. 489
(216 P. 228), it was held that a party guilty of fraud
in making the contract "cannot exculpate himself
from the consequences of his own wrong by a provision
in writing that his fraudulent oral representations
shall not be used as evidence against him in a case
in which fraud and deceit is the gist of the cause."

 It is evident that this stipulation was
inserted in the contract for the purpose of relieving
the defendant from liability for fraud. Before consid-
ering whether it could have that effect or not, it is well
to consider what the stipulation actually is. It is in
these words: "No statements or representations of
any kind or nature made by vendor's agents or

employes and not contained herein shall be binding upon vendor, its successors or assigns and all agents or employes are strictly prohibited from promising any purchaser a resale of said property.'' It does not assert that no statements, representations or promises of resale have been made. It merely states that if they have been made they shall not be binding upon the vendor, its successors or assigns. In other words, if there have been fraduluent representations made plaintiff will waive her right to enforce defendant's liability therefor. We think that the effect of this stipulation was to attempt to relieve the defendant from liability for the misrepresentation of its agents inducing plaintiff to enter into the contracts and that such a stipulation is unenforceable because against public policy, that the fraud complained of vitiates the entire transaction and that the introduction of parol testimony of the fraudulent representations was admissible, the fraud having been alleged under the provisions of subd. 2, § 713, O. L., which provides, in effect, that the parol evidence rule shall not apply ''where the validity of the agreement is the fact in dispute.''

Since the argument, our attention has been called to a recent decision of the supreme court of Washington in the case of *Lundgren et ux. v. Spencer and N. B. Clarke,* in which it was held that a suit for rescission could not be maintained against Spencer because of fraudulent representations and promises made by Clarke to the plaintiffs in that suit, wherein Clarke had fraudulently promised plaintiffs to make a resale of the property, the inducing cause for their purchase. In that case the contract signed by the plaintiffs with Spencer contained a provision as follows: ''It is

understood that no guarantee of resale for the purchaser of the above described property is made by this company, and that no agreement is made between the parties hereto other than that appearing herein.'' In the case at bar the provision was to the effect that no representation of vendor's agents should be binding upon vendor and that its agents ''are strictly prohibited from promising any purchaser a resale of said property.'' The two provisions are not identical in terms or in effect. The ground of decision in that suit seems to have been that, because Spencer himself was not guilty of any fraud and had not authorized his agent to make any representations, a suit for rescission could not be maintained. While entertaining the highest respect for the great learning and ability of that court, we are unable to follow that decision in this case for we think that under the great weight of authority it is not necessary, in order that a contract may be rescinded because of the fraudulent representations of an agent, that the principal should have known that the representations were false or that they had been made. We think that the rule deducible from the authorities we have cited is that misrepresentations innocently made, where the party retains the fruits of a bargain induced by such representations, are sufficient to maintain a suit for rescission. See 3 Williston on Contracts, § 1500, and authorities there cited.

From this it follows that the decree appealed from must be affirmed, and it is so ordered. AFFIRMED.

BELT and BROWN, JJ., absent.

ROSSMAN, J., dissenting.